IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,<br>1667 K Street, NW, Suite 700<br>Washington, DC 20006<br><br>and<br><br>AMERICAN PETROLEUM INSTITUTE,<br>1220 L Street, NW<br>Washington, DC 20005<br><br>      Plaintiffs,<br><br>  v.<br><br>GINA MCCARTHY, in her official capacity as Administrator, U.S. Environmental Protection Agency,<br><br>and<br><br>ENVIRONMENTAL PROTECTION AGENCY,<br><br>      Defendants. | No. 1:15-cv-00394 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs American Fuel & Petrochemical Manufacturers ("AFPM") and American Petroleum Institute ("API") (collectively "Plaintiffs") bring this action to compel Defendants, the U.S. Environmental Protection Agency and the Honorable Gina McCarthy, in her official capacity as Administrator of the U.S. Environmental Protection Agency (collectively "EPA"), to establish renewable fuel obligations for the 2014 and 2015 compliance years. Continuing its multi-year trend of disregarding statutory deadlines, EPA has ignored the nondiscretionary duty established by Clean Air Act ("CAA") Section 211(o)(3)(B), 42 U.S.C. § 7545(o)(3)(B), to promulgate the 2014 RFS obligations on or before November 30, 2013 and to promulgate

the 2015 RFS obligations on or before November 30, 2014.  EPA has also failed to meet its obligation under CAA Section 211(o)(7)(B), 42 U.S.C. § 7545(o)(7)(B), to act on Plaintiffs' August 13, 2013 petition for a waiver of the 2014 RFS applicable volumes within 90 days.  Plaintiffs hereby seek an injunction requiring EPA promptly to promulgate renewable fuel obligations for 2014 and 2015.  In support, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), which authorizes citizen suits concerning EPA's failure to perform a nondiscretionary duty required by the CAA.  Section 7604(a) grants this Court jurisdiction to order EPA to perform such duty.  In addition, this Court has jurisdiction over this action and over the parties pursuant to 28 U.S.C. §§ 1331 and 1361.  The relief requested is authorized under 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361.

2. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia, and a substantial part, if not all, of the events or omissions giving rise to the claims asserted herein arose in this District.

## PARTIES

3. Plaintiff AFPM is a national trade association of more than 400 companies that refine and manufacture virtually the entire U.S. supply of gasoline, diesel, jet fuel, and home heating oil, as well as the petrochemicals that are used as building blocks for thousands of vital daily life functions, ranging from computers to medicine to parts used in all modes of transportation.

4. Plaintiff API is a national trade organization that represents all aspects of America's oil and natural gas industry.  API's over 625 corporate members, ranging from the largest major oil company to the smallest independents, represent all segments of the industry.

API's members include producers, refiners, pipeline operators, and marine transporters, as well as service and supply companies that support all segments of the industry.

5. Plaintiffs represent their members in judicial, legislative, and administrative forums. In particular, Plaintiffs routinely comment on EPA rulemaking proposals to implement the RFS program, and have participated in litigation involving several of EPA's RFS regulations since the program's inception.

6. As refiners of gasoline and diesel, Plaintiffs' members are "obligated parties" under the RFS program, which means that they must demonstrate that they meet four different Renewable Volume Obligations ("RVOs") on an annual basis. Each member's annual compliance obligations are based on how much non-renewable gasoline and diesel they produce or import in a given year and on EPA's calculation of annual percentage standards for the four renewable fuel types for each compliance year.

7. AFPM and API are "person[s]" as defined in the CAA. *See* 42 U.S.C. § 7602(e).

8. Defendant Gina McCarthy is the Administrator of the EPA. The Administrator is charged with implementation and enforcement of the CAA, including the CAA's nondiscretionary duty timely to determine annual renewable fuel obligations on an annual basis.

9. Defendant EPA is an executive agency of the federal government charged with implementing the CAA's RFS program.

## STATUTORY AND REGULATORY BACKGROUND

10. In the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, Congress amended the CAA to establish the RFS program to increase the quantity of renewable fuels used in gasoline in the United States. Congress expanded that program in 2007 with the Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 142. That law

increased the overall annual volumes of renewable fuel required through the year 2022 for four different categories of renewable fuel: renewable fuel, advanced biofuel, biomass-based diesel and cellulosic biofuel. These categories are "nested": biomass-based diesel and cellulosic biofuel are types of advanced biofuel, and advanced biofuel is a type of renewable fuel.

   a. Biomass-based diesel is a diesel-fuel substitute, derived from animal wastes and similar sources, that "has lifecycle greenhouse gas emissions . . . that are at least 50 percent" lower than a "baseline" level set by EPA. 42 U.S.C. § 7545(o)(1)(D).

   b. Cellulosic biofuel is a form of renewable fuel, derived from sources such as switchgrass and agricultural wastes, that "has lifecycle greenhouse gas emissions . . . that are at least 60 percent less than" the "baseline" level. *Id.* § 7545(o)(1)(E).

   c. Advanced biofuel is a category covering renewable fuels, "other than ethanol derived from corn starch," whose "lifecycle greenhouse gas emissions" are at least 50 percent below the "baseline" level. Examples include biomass-based diesel, cellulosic biofuel, and sugar-based ethanol. *Id.* § 7545(o)(1)(B).

   d. Renewable fuel is a category defined as "fuel that is produced from renewable biomass and that is used to replace or reduce the quantity of fossil fuel present in a transportation fuel." *Id.* § 7545(o)(1)(J). That category includes each of the fuel types described above, plus other fuels such as ethanol derived from corn starch.

   11. The statute specifies minimum, or "applicable," annual volume requirements for renewable fuel, advanced biofuel, and cellulosic biofuel through 2022, and applicable volume requirements for biomass-based diesel for each year through 2012. *Id.* § 7545(o)(2)(B).

12. Because the statute's applicable volume requirements increase rapidly over time, Congress equipped EPA with several tools to tailor those requirements to actual conditions in the marketplace and the national economy. These tools include two provisions requiring or permitting EPA to reduce or waive certain requirements. *Id.* § 7454(o)(7).

13. The first waiver provision concerns cellulosic biofuel. Under this provision, EPA must issue a "projected volume of cellulosic biofuel production" each year "based on" data provided by the Energy Information Administration. *Id.* § 7545(o)(7)(D)(i). Whenever that projected volume is less than the statutory level, EPA *must* reduce the applicable volume of cellulosic biofuel to the projected volume for the following year. *Id.* § 7545(o)(7)(D)(i). EPA must make this determination by November 30 of the year before the applicable volume will go into effect. For example, EPA was required to decide whether to reduce the 2014 cellulosic-biofuel requirement by November 30, 2013. *Id.*

14. The second waiver provision applies to all fuel categories. It authorizes EPA to waive the applicable volume requirements for any given calendar year "in whole or in part on petition by one or more States, by any person subject to the requirements of this subsection, or by the Administrator on [her] own motion by reducing the national quantity of renewable fuel required under [42 U.S.C. § 7545(o)(2)]." *Id.* § 7545(o)(7)(A). EPA may do so if it reduces the applicable volume of cellulosic biofuel below the statutory level, *id.* § 7545(o)(7)(D)(i), or based on a determination that implementation of the applicable volume requirement(s) "would severely harm the economy or environment of a State, region, or the United States" or that "there is an inadequate domestic supply," *id.* § 7545(o)(7)(A).

15. If an obligated party petitions EPA for a waiver of the applicable volume requirements for a particular year, EPA "shall approve or disapprove" that petition "within 90 days after the date on which the petition is received by the Administrator." *Id.* § 7545(o)(7)(B).

16. The applicable volume requirements are not self-executing. Instead, EPA must promulgate annual "regulations to ensure that transportation fuel sold or introduced into commerce in the United States . . . , on an annual average basis, contains the applicable volume," as adjusted through the waiver process, "of renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel." *Id.* § 7545(o)(2)(A)(i). EPA must "determine and publish" these regulations "[n]ot later than November 30" of the preceding compliance year. *Id.* § 7545(o)(3)(B).

17. The annual regulations are expressed as a "percentage of transportation fuel sold or introduced into commerce in the United States." *Id.* § 7545(o)(3)(B)(ii)(II). For example, the 2012 RFS regulations set thresholds of 0.91% for biomass-based diesel, 0.006% for cellulosic biofuel, 1.21% for advanced biofuel, and 9.23% for total renewable fuel. *See Regulation of Fuels and Fuel Additives: 2012 Renewable Fuel Standards*, 77 Fed. Reg. 1,320, 1,341 (Jan. 9, 2012) (*2012 Regulations*).

18. Because the applicable volume requirements set in the statute are not self-executing, and because EPA adjusts those requirements through the waiver process, obligated parties do not know their precise obligations for any year until EPA fulfills its obligation under CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i), to determine and publish the renewable fuel regulations for each calendar year.

19. After EPA promulgates the RFS obligations for a particular calendar year, obligated parties must demonstrate compliance with the annual RVOs for each of the four types

of renewable fuel. *See* 42 U.S.C. § 7545(o)(3)(B)(ii)(I). These RVOs are expressed in gallons, and are company-specific. Each obligated party determines its RVOs by multiplying the volumes of non-renewable gasoline and diesel that it produces or imports into the 48 contiguous states and Hawaii in a calendar year by the applicable annual percentage standards that EPA establishes by regulation for that year. *See id.* § 7545(o)(3)(B)(i); 40 C.F.R. § 80.1407. Each obligated party demonstrates compliance with its RVOs by retiring for compliance purposes a sufficient number of Renewable Identification Numbers ("RINs") to satisfy volumes measured in gallons derived from equations for calculating a party's RVO for each of the four renewable fuels. *See* 40 C.F.R. § 80.1427.

20.     RINs are unique numbers "generated to represent a volume of renewable fuel pursuant to" other regulatory provisions that specify the form, generation and assignment of RINs to renewable fuel. 40 C.F.R. § 80.1401. While RINs are generated through the production of renewable fuel, they may be used for compliance or transferred to another party only after being separated from the fuel. Separation of RINs can occur only under defined circumstances, *e.g.*, where renewable fuel is owned by an obligated party, blended into gasoline or diesel, or exported. *See* 42 U.S.C. §§ 7545(o)(2)(A)(ii)(II)(cc), 7545(o)(2)(A)(iii)(II)(bb); 40 C.F.R. § 80.1429.

21.     EPA has promulgated regulations to establish an EPA Moderated Transaction System ("EMTS") to account for the production of renewable fuel and the transfer of RINs. 40 C.F.R. § 80.1452. Producers and importers of renewable fuel must submit information to EPA through EMTS to report various information regarding RINs, including what type of renewable fuel has been produced or imported. *Id.* Parties who sell, separate, or retire RINs must also submit information to EPA through EMTS. *Id.*

22.     The deadline established by CAA section 211(o)(3)(B), 42 U.S.C. § 7545(o)(3)(B) for EPA to establish renewable fuel obligations is intended to inform obligated parties, *prior to each compliance year*, of their upcoming RFS obligations so they can plan accordingly.  As EPA indicated when it promulgated regulations for the expanded RFS program in 2007, "[g]iven the implications of these standards and the necessary judgment that can[no]t be reduced to a formula akin to the [previous RFS program] regulations, we believe it is appropriate to set standards through a notice-and-comment rulemaking process.  Thus, for future standards, we intend to issue [a Notice of Proposed Rulemaking] by summer and a final rule by November 30 of each year in order to determine the appropriate standards applicable in the following year."  *Regulation of Fuels and Fuel Additives: Changes to Renewable Fuel Standard Program*, 75 Fed. Reg. 14,670, 14,675 (Mar. 26, 2010) (*2010 Regulations*).

23.     If an obligated party fails to demonstrate compliance with its annual obligations for a given year, it may face substantial daily penalties.  *See* 42 U.S.C. § 7545(d)(1); 40 C.F.R. § 80.1463.

## FACTUAL BACKGROUND

*Annual RFS Regulations*

24.     EPA has repeatedly failed to meet the November 30 statutory deadline for promulgating annual RFS regulations.  For example:

- EPA did not promulgate the final 2010 RFS regulations until March 26, 2010, 116 days late and almost four months into the compliance year, *see 2010 Regulations*, 75 Fed. Reg. at 14,670;

- EPA did not promulgate the final 2011 RFS regulations until December 9, 2010, nine days late, *see Regulation of Fuels and Fuel Additives: 2011 Renewable Fuel Standards*, 75 Fed. Reg. 76,790 (Dec. 9, 2010) (*2011 Regulations*);

- EPA did not promulgate the final 2012 RFS regulations until January 9, 2012, forty days late, *see 2012 Regulations*, 77 Fed. Reg. at 1,320; and

- EPA did not promulgate the final 2013 RFS regulations until August 15, 2013, 258 days late and nearly two-thirds of the way through the compliance year, *see Regulation of Fuels and Fuel Additives: 2013 Renewable Fuel Standards*, 78 Fed. Reg. 49,794 (Aug. 15, 2013).

25. Under 42 U.S.C. § 7545(o), EPA was obligated to promulgate the 2014 RFS regulations on or before November 30, 2013.

26. EPA published a notice of *proposed* rulemaking to establish the 2014 RFS regulations on November 29, 2013, *see 2014 Standards for the Renewable Fuel Standard Program*, 78 Fed. Reg. 71,732 (Nov. 29, 2013), one day before Defendants were required by statute to promulgate a *final* rule.

27. On August 22, 2014, EPA submitted a final rule for the 2014 RFS regulations to the Office of Management and Budget for its review under Executive Order 12866, which provides, among other things, for the Office of Information and Regulatory Affairs to review "significant regulatory actions."

28. Despite submitting a final rule for review under Executive Order 12866, albeit nearly three-quarters of the way through the compliance year, EPA has not yet promulgated the 2014 RFS regulations.

29. On December 9, 2014, after the deadline came and went for promulgation of the *2015* RFS regulations, EPA announced that the final *2014* rule would not be promulgated until sometime in 2015. *See Delay in Issuing 2014 Standards for the Renewable Fuel Standard Program*, 79 Fed. Reg. 73,007, 73,008 (Dec. 9, 2014) (*Delay Notice*). In that announcement, EPA admitted that "[f]inalization of the 2014 standards rule has been significantly delayed." *Id.*

30. Not only has EPA failed to meet the statutory deadline for promulgation of the 2014 RFS regulations, it has also failed to promulgate the final 2015 RFS regulations by the November 30, 2014 statutory deadline. Indeed, EPA has not yet even proposed 2015 RFS regulations.

### *Plaintiffs' 2013 Waiver Petition*

31. On August 13, 2013, Plaintiffs petitioned EPA to waive, in part, the 2014 applicable volumes of the RFS pursuant to CAA Section 211(o)(7)(A), 42 U.S.C. § 7545(o)(7)(A). *See* Exhibit A. EPA acknowledged its receipt of Plaintiffs' request in a Federal Register notice published on November 29, 2013. *See Notice of Receipt of Petitions for a Waiver of the Renewable Fuels Standard*, 78 Fed. Reg. 71,607 (Nov. 29, 2013).

32. In their petition, Plaintiffs asserted that unless EPA grants a waiver of the 2014 applicable volumes, implementation of the RFS will result in inadequate domestic supplies of gasoline and diesel fuel and severe economic harm to consumers and the economy.

33. EPA has failed to take action on Plaintiffs' petition for a waiver, despite the statutory command that EPA "shall approve or disapprove" that petition within 90 days of receipt. 42 U.S.C. § 7545(o)(7)(B). That deadline expired on November 11, 2013.

34. These failures are a violation of the mandatory duties and deadlines imposed on Defendants by CAA Section 211(o), 42 U.S.C. § 7545(o) and have caused harm to Plaintiffs' members, as described below.

## **INJURIES RESULTING FROM EPA'S FAILURE TO ACT**

35. Plaintiffs' members are obligated parties under the RFS program, *see* 42 U.S.C. § 7545(o)(3)(B)(ii)(I), and are directly regulated by EPA regulations implementing that program. Once EPA completes its rulemaking process and issues the final 2014 and 2015 RFS regulations, Plaintiffs' members will need to comply with the 2014 and 2015 RFS regulations by retiring a sufficient number of RINs to meet their compliance obligations for all four renewable fuel types. 40 C.F.R. § 80.1427.

36. Plaintiffs' members must also comply with various reporting requirements associated with RIN transactions occurring in 2014 and 2015 (*see* 40 C.F.R. § 80.1451) and keep records regarding product transfer documents, RIN transactions, and other matters for the 2014 compliance year. *See* 40 C.F.R. § 80.1454.

37. Plaintiffs' members have suffered and continue to suffer economic injury as a result of EPA's failure to timely promulgate the final 2014 and 2015 RFS fuel obligations. Plaintiffs' members are also injured by EPA's failure to act on Plaintiffs' August 2013 petition for a waiver of 2014 applicable volume requirements. EPA's delay in taking those actions negates any ability for Plaintiffs' members to plan and, if necessary, adjust their operations to assure compliance with annual RFS regulatory requirements.

38. Timely promulgation of the 2014 and 2015 applicable volumes of renewable fuel and percentage standards by November 30 of the prior year allows obligated parties to calculate their RVOs based on how much gasoline and diesel they will produce or import into the United States in the coming year. Parties are then able to adjust their production or importation and, by

11

extension, the amount of their annual RFS obligation.  Since 2014 is now over, however, obligated parties are unable to change their production or importation of gasoline and diesel for 2014 and therefore have been denied the ability to control the extent of their RFS obligations.  Given the Agency's delay in proposing the 2015 RFS regulations, obligated parties will likely be similarly constrained with respect to controlling the extent of their RFS obligations in 2015.

39. Many refineries manufacture a range of products, depending on their configurations and the crude oil available.  Some of these products are regulated pursuant to the RFS program (*e.g.* gasoline, diesel) and some are not (*e.g.* jet fuel, fuel oil, bunker fuel, *etc.*).  Refineries choose their product mix in part by analyzing the costs and profitability of refining one product versus another.  This flexibility allows refineries to more effectively respond to individual markets and individual needs in given markets.  Thus, EPA's failure to promulgate annual RFS regulations curtails this market response and the ability of refineries to plan their production of various products.  EPA's ongoing failure to promulgate the 2014 and 2015 annual regulations prevents Plaintiffs' members from knowing how many RINs will be required to meet their 2014 and 2015 RFS compliance obligations.

40. RINs are subject to expiration.  RINs are "to be used to show compliance" only "for the year in which the renewable fuel was produced and its associated RIN first generated, or for the following year."  *2010 Regulations*, 75 Fed. Reg. at 14,734; 40 C.F.R. § 80.1427.  Therefore, the RFS program allows Plaintiffs' members to determine what RINs to use in each compliance year and what RINs they may want to retain for use in a succeeding year.  But Plaintiffs' members must now "guess" at how many RINs will be required for both 2014 and 2015.  They do not have the ability to know how many RINs they may need to hold, acquire, or

potentially transfer to other parties. This economic injury continues each day that EPA fails to perform its statutory duties under the CAA.

41. EPA has failed to set a firm date by which it will let obligated parties know of their compliance obligations for 2014 and 2015. EPA has stated only that the Agency "intend[s] to take action of the 2014 standards rule in 2015 prior to or conjunction with action on the 2015 standards rule." *Delay Notice*, 79 Fed. Reg. at 73,008.

42. Continuing uncertainty as to when EPA will promulgate final 2014 and 2015 RFS regulations and what those regulations will require also deprives Plaintiffs' members of the lead time mandated by Congress in 42 U.S.C. §7545(o)(3)(B) that allows them to make business decisions concerning their operations, logistics, and finances.

43. All of the above injuries are the direct result of EPA's failure to timely comply with the statutory deadlines prescribed by the CAA.

44. The interests Plaintiffs seek to protect are germane to their organizational purposes. A primary purpose of both Plaintiffs is to represent and protect the interests of the regulated industry before EPA and other government regulators.

45. Plaintiffs' members would have standing to sue in their own right as obligated parties under the RFS program.

46. Neither the claim asserted nor the relief requested requires individual member company participation.

## NOTICE

47. Sixty days prior to bringing an action "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," 42 U.S.C. § 7604(a)(2), the plaintiff must give notice to the Administrator, *id.* § 7604(b)(2).

48. On November 21, 2014, AFPM provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54 to enforce EPA's nondiscretionary duty to promulgate the 2014 RFS regulations on or before November 30, 2013.  A copy of this letter is attached hereto as Exhibit B.

49. On December 1, 2014, AFPM provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54 to enforce EPA's nondiscretionary duty to promulgate the 2015 RFS regulations on or before November 30, 2014.  A copy of this letter is attached hereto as Exhibit C.

50. On December 15, 2014, API provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54 to enforce EPA's nondiscretionary duty to promulgate the 2014 RFS standards on or before November 30, 2013 and to approve or disapprove Plaintiffs' petition for a waiver of the 2014 applicable volumes within 90 days.  A copy of this letter is attached hereto as Exhibit D.

51. EPA timely received Plaintiffs' notice letters, as demonstrated by the fact that EPA posted copies of each on its webpage entitled "Notices of Intent to Sue the U.S. Environmental Protection Agency (EPA)," http://www.epa.gov/ogc/noi.html.

52. More than sixty days have passed since Plaintiffs served their respective notice letters on EPA.

## CLAIMS FOR RELIEF

### COUNT I: Failure to Perform a Nondiscretionary Act or Duty
### to Promulgate the 2014 RFS Regulations

53. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1 through 52 as if fully set forth herein.

54. CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i), requires EPA to determine, and publish in the Federal Register, annual renewable fuel volumes and renewable fuel obligations for the following calendar year "[n]ot later than November 30 of each of calendar years 2005 through 2021." 42 U.S.C. § 7545(o)(3)(B)(i).

55. EPA has acknowledged that it is required by statute to determine and publish the applicable annual regulations for cellulosic biofuel, biomass-based diesel, advanced biofuel, and renewable fuel by November 30 of the previous year. *See, e.g., 2011 Regulations,* 75 Fed. Reg. at 76,791.

56. For calendar year 2014, EPA was required to determine and publish annual renewable fuel volumes and renewable fuel obligations (*i.e.*, RFS regulations) by November 30, 2013.

57. EPA published a notice of proposed rulemaking to establish the 2014 RFS regulations on November 29, 2013, one day before Defendants were required by statute to promulgate a final rule. Thereafter, EPA completed initial agency action on a final rule by August 22, 2014 and sent the final rule to the Office of Management and Budget. On December 9, 2014, however, EPA indicated that it would not finalize the 2014 RFS regulations until sometime in 2015.

58. EPA's failure to timely promulgate the 2014 RFS regulations in accordance with 42 U.S.C. § 7545(o) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator[.]" 42 U.S.C. § 7604(a)(2).

59. The delay caused by EPA's failures has harmed and continues to harm Plaintiffs' members, who are unable to meaningfully plan to ensure compliance with regulatory requirements for 2014.

60. EPA's failure to perform this nondiscretionary act or duty continues to this day.

### COUNT II: Failure to Perform a Nondiscretionary Act or Duty to Promulgate the 2015 RFS Regulations

61. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1 through 60 as if fully set forth herein.

62. CAA Section 211(o)(3)(B)(i), 42 U.S.C. § 7545(o)(3)(B)(i), requires EPA to determine, and publish in the Federal Register, annual renewable fuel volumes and renewable fuel obligations for the following calendar year "[n]ot later than November 30 of each of calendar years 2005 through 2021." 42 U.S.C. § 7545(o)(3)(B)(i).

63. EPA has acknowledged that it is required by statute to determine and publish the applicable annual regulations for cellulosic biofuel, biomass-based diesel, advanced biofuel, and renewable fuel by November 30 of the previous year. *See, e.g., 2011 Regulations*, 75 Fed. Reg. at 76,791.

64. For calendar year 2015, EPA was required to determine and publish annual renewable fuel volumes and renewable fuel obligations (*i.e.*, RFS regulations) by November 30, 2014.

65. EPA has not yet even published a notice of proposed rulemaking to establish the 2015 RFS regulations.

66. EPA's failure to timely promulgate the 2015 RFS regulations in accordance with 42 U.S.C. § 7545(o) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator[.]" 42 U.S.C. § 7604(a)(2).

67. The delay caused by EPA's failures has harmed and continues to harm Plaintiffs' members, who are unable to meaningfully plan to ensure compliance with regulatory requirements for 2015.

68. EPA's failure to perform this nondiscretionary act or duty continues to this day.

### COUNT III: Failure to Perform a Nondiscretionary Act or Duty to Approve or Disapprove a Petition for a Waiver of RFS Requirements

69. Plaintiffs re-allege and incorporate herein the allegations in Paragraphs 1 through 68 as if fully set forth herein.

70. CAA Section 211(o)(7)(A) authorizes EPA to waive the applicable volume requirements of the RFS in whole or in part "on petition by one or more States, by any person subject to the requirements of this subsection, or by the Administrator on his own motion by reducing the national quantity of renewable required under" Section 211(o)(2), provided that EPA makes the requisite determinations.  42 U.S.C. §§ 7545(o)(7)(A), 7545(o)(2).

71. CAA Section 211(o)(7)(B) requires EPA to "approve or disapprove a petition for a waiver . . . within 90 days after the date on which the petition is received by the Administrator." 42 U.S.C. § 7545(o)(7)(B).

72. Plaintiffs jointly petitioned EPA on August 13, 2013 pursuant to 42 U.S.C. § 7545(o)(7)(A) seeking a partial waiver of the 2014 applicable volumes set forth by in 42 U.S.C. § 7545(o)(2).

73. EPA has failed to either approve or disapprove Plaintiffs' petition for a waiver.

74. EPA's failure to act on Plaintiffs' petition for a waiver in accordance with 42 U.S.C. § 7545(o)(7)(B) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator[.]" 42 U.S.C. § 7604(a)(2).

75. The delay caused by EPA's failure has harmed and continues to harm Plaintiffs' members, who are unable to meaningfully plan to ensure compliance with regulatory requirements for 2014.

76. EPA's failure to perform this nondiscretionary act or duty continues to this day.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that Defendants have failed to perform a nondiscretionary act or duty under 42 U.S.C. § 7545(o) to promulgate the 2014 and 2015 RFS regulations;

B. Declare that Defendants have failed to perform a nondiscretionary act or duty under 42 U.S.C. § 7545(o)(7)(B) to respond to a petition for a waiver within 90 days;

C. Order EPA to promulgate final 2014 and 2015 RFS regulations promptly under 42 U.S.C. § 7545(o), pursuant to a deadline established by this Court

D. Order EPA to promulgate all future RFS regulations by the statutory deadlines prescribed in 42 U.S.C. § 7545(o);

E. Order the Administrator to respond promptly to Plaintiffs' August 13, 2013 petition for a waiver under 42 U.S.C. § 7545(o)(7)(B), pursuant to a deadline established by this Court;

F. Retain jurisdiction to ensure compliance with the Court's order;

G. Award Plaintiffs the costs of its participation in this action, including reasonable attorneys' fees; and

H. Grant such other relief as the Court deems just and proper.

March 18, 2015

Respectfully submitted,

/s/ David Y. Chung
Chet M. Thompson (No. 448559)
Robert Meyers (No. 294298)
David Y. Chung (No. 500420)
Sherrie A. Armstrong (No. 1009642)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500
cthompson@crowell.com

Richard Moskowitz
AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS
1667 K Street, NW
Suite 700
Washington, DC 20006
rmoskowitz@afpm.org

*Attorneys for American Fuel & Petrochemical Manufacturers*

/s/ Robert A. Long, Jr.
Robert A. Long, Jr. (No. 415021)
Henry Liu (No. 986296)
Kevin King (No. 1012403)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
(202) 662-6000
rlong@cov.com

Stacy Linden (No. 465776)
Erik Baptist (No. 490159)
AMERICAN PETROLEUM INSTITUTE
1220 L Street NW
Washington, DC 20005-4070
(202) 682-8229
baptiste@api.org

*Attorneys for American Petroleum Institute*